ALBERTO TORO RUIZ, promovente y apelante, *v.* JUNTA DE LIBERTAD BAJO PALABRA y OTROS, promovidos y apelados.

*Número:* AC-90-664          *Resuelto:* 22 de julio de 1993

162

*Cándida Valdespino Zapata*, de la *Sociedad para Asistencia Legal*, abogada del apelante; *Jorge E. Pérez Díaz, Procurador General*, y *Carlos Lugo Fiol, Procurador General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Debemos determinar si cuando el cumplimiento de una sentencia en libertad bajo palabra se ha interrumpido debido a la emisión de una orden de arresto por la Junta de Libertad bajo Palabra (en adelante Junta), los términos

dispuestos por ley para realizar el procedimiento de revocación de esa libertad comienzan a correr desde la fecha del arresto del liberado efectuado fuera de la jurisdicción territorial o si éstos comienzan a correr desde que el liberado es extraditado y encarcelado en Puerto Rico.

I

El apelante Adalberto Toro Ruiz fue sentenciado el 3 de septiembre de 1976 a cumplir siete años de reclusión por dos violaciones al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404. El 28 de octubre de 1977 se le concedió la libertad bajo palabra. Posteriormente, el oficial sociopenal a cargo del apelante informó a la Junta que éste se había marchado hacia Nueva York sin permiso escrito, lo que constituía una violación grave de una de las condiciones de su libertad bajo palabra. En vista de ello, el 22 de octubre de 1979 la Junta emitió una orden de arresto contra el apelante.

El apelante fue arrestado en Westchester, Nueva York, el 8 de abril de 1986, por tener pendiente una orden de arresto de Puerto Rico. Allí permaneció bajo la custodia estatal hasta el 24 de junio de 1986, cuando el Estado desestimó el caso por no haberse presentado los documentos formales de extradición.

El 7 de febrero de 1990 el apelante fue arrestado otra vez por las autoridades de Nueva York y extraditado a Puerto Rico el 7 de junio de 1990 por orden de la Junta. Ese mismo día arribó a la isla y fue ingresado en el Centro de Detención Regional de Bayamón. El 11 de junio de 1990 fue llevado ante la Junta, donde se celebró la vista sumaria inicial ante un oficial examinador. Durante dicha vista, el apelante solicitó su excarcelación debido a la falta de jurisdicción de la Junta. Este planteamiento no fue resuelto por la Junta. Al no ser excarcelado, el 13 de junio de 1990 el apelante presentó una petición de hábeas corpus ante el

Tribunal Superior, Sala de Bayamón, el cual señaló vista para el 20 de junio de 1990. El 14 de agosto de 1990 el Tribunal a quo declaró sin lugar esa petición. Oportunamente el apelante solicitó reconsideración, la cual fue denegada por el Tribunal de Primera Instancia tras celebrarse una vista.

El 10 de septiembre de 1990 el apelante recurrió ante nos mediante escrito de apelación. Ese mismo día el apelante, mediante una moción al amparo de la Regla 50 del Tribunal Supremo de Puerto Rico, 4 L.P.R.A. Ap. I–A, nos solicitó que se prescindiera del trámite relativo a la preparación, aprobación y certificación de la exposición narrativa de la prueba y se permitiera a las partes someter sus respectivos alegatos.

El 13 de septiembre de 1990 el tribunal de instancia —a petición del apelante— le fijó una fianza de $1,000, la cual fue prestada por sus padres y fue excarcelado.

Posteriormente el apelante acudió ante nos mediante moción en auxilio de jurisdicción solicitando la paralización de los procedimientos de revocación ante la Junta. La solicitud fue denegada, por lo que el apelante compareció ante la Junta y solicitó la suspensión de la vista de su caso.

El 26 de septiembre de 1990 el apelante presentó ante nos su alegato con los señalamientos de error siguientes:

PRIMERO:

> Erró el Honorable Tribunal de instancia al declarar no ha lugar el auto de hábeas corpus determinando que la Junta de Libertad Bajo Palabra retuvo su jurisdicción, negándose así a ordenar la inmediata excarcelación del apelante en violación a la Ley 118 de 22 de julio de 1974. 4 L.P.R.A. sec. 1505.

SEGUNDO:

> Erró el Honorable Tribunal de instancia al determinar que la Junta de Libertad Bajo Palabra mantiene sobre los liberados jurisdicción indefinida cuando se dan las siguientes circunstancias del caso de autos:
> (A) Cuando la orden de arresto del organismo administrativo se ejecuta y se hace efectiva su custodia en la jurisdicción de algún estado de E.U.A.;

(B)Cuando luego de pasados los términos estatutarios para mantener la persona bajo la custodia estatal (en la situación de autos, N.Y.) se le excarcela y se le desestima el caso por razón de que la autoridad local (Puerto Rico) no presentara los documentos formales al Tribunal;

(C)Cuando después de la excarcelación en la otra jurisdicción la Junta omitiere por la razón que fuere, emitir una nueva orden de arresto durante el tiempo que le restaba al liberado por cumplir su sentencia en libertad bajo palabra;

(D)Cuando el liberado no regresare voluntariamente a Puerto Rico luego de desestimarse el caso de extradición y ser excarcelado por las autoridades estatales.

## TERCERO:

Erró el Honorable Tribunal de instancia al determinar que al ser excarcelado el liberado por las autoridades estatales de New York volvía a interrumpirse automáticamente el término que le restaba por cumplir en libertad bajo palabra; y así también volvía a quedar en vigor nuevamente la orden original de arresto emitida por la Junta para volverse a ejecutar en cualquier momento, ya que por consecuencia de falta de trámites administrativos no podía perder la jurisdicción en la querella. Alegato del apelante, págs. 6–7.

Con el beneficio de los alegatos de ambas partes, pasamos a resolver.

## II

La Ley Núm. 118 de 22 de julio de 1974, según enmendada, 4 L.P.R.A. sec. 1501 *et seq.*, creó la Junta de Libertad bajo Palabra y le concedió poder para "decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico". 4 L.P.R.A. sec. 1503.

Una vez la Junta concede a una persona su libertad bajo palabra para revocarla tiene que seguir el procedimiento de arresto y revocación provisto en el Art. 5 de la Ley Núm. 118, *supra*, 4 L.P.R.A. sec. 1505.[1]

---

[1] El Art. 5 de la Ley Núm. 118 de 22 de julio de 1974 fue enmendado mediante la Ley Núm. 2 de 26 de febrero de 1987 (4 L.P.R.A. sec. 1505), a los fines de incorpo-

Surge del artículo citado que el procedimiento de revocación de libertad bajo palabra comienza con la emisión, por parte de la Junta, de una orden de arresto contra el liberado que alegadamente ha incurrido en alguna violación a las condiciones de su libertad bajo palabra. 4 L.P.R.A. sec. 1505.

Una vez se arresta al liberado en virtud de una orden emitida por la Junta, la ley establece unos términos para realizar la investigación pertinente, celebrar las vistas necesarias y completar el procedimiento de revocación de la libertad bajo palabra. 4 L.P.R.A. sec. 1505.

La ley dispone expresamente que si el Estado no completa el procedimiento de revocación de la libertad bajo palabra —dentro de los términos allí establecidos— se considerará que la supuesta infracción no fue cometida por el liberado. 4 L.P.R.A. sec. 1505.

Tanto el apelante como el Procurador General coinciden en que la orden de arresto contra el apelante, emitida por la Junta el 22 de octubre de 1979, tuvo el efecto de interrumpir el término de la sentencia que le restaba por cumplir al liberado en libertad bajo palabra. Por lo tanto, coinciden en que el tiempo transcurrido entre la emisión de la orden de arresto y el momento en que éste fuera efectivamente realizado, no contaría para el cumplimiento de la sentencia impuesta al liberado.

La partes, sin embargo, no están de acuerdo en cuanto a la fecha a partir de la cual comenzarían a correr los términos establecidos en la ley para el procedimiento de revocación de libertad bajo palabra. Según el apelante, desde que fue arrestado en Nueva York, el 8 de abril de 1986, comenzó a correr el tiempo para que el Estado llevara a cabo el procedimiento de revocación de su libertad. Al ser excarcelado por las autoridades de Nueva York, el 24 de junio de

---

rar al procedimiento de revocación de libertad bajo palabra las normas establecidas en *Martínez Torres v. Amaro Pérez*, 116 D.P.R. 717 (1985), sobre los requisitos constitucionales mínimos del debido proceso de ley.

1986, el apelante alega que comenzó de nuevo a cumplir su sentencia en libertad a prueba, cuyo cumplimiento se había interrumpido por la orden de arresto. El apelante señala, además, que la Junta no emitió una nueva orden de arresto contra él —que interrumpiera nuevamente su sentencia— por lo que a la fecha de su extradición ya había cumplido su totalidad.

Por su parte, el Estado sostiene que la fecha a considerarse como punto de partida, para computar los términos dispuestos por la ley es el 7 de junio de 1990, cuando el apelante fue extraditado e ingresado en una cárcel de Puerto Rico.

■ La Ley Núm. 118, *supra*, no dispone nada para casos como el presente en los cuales un liberado se ausenta de la jurisdicción sin permiso y por razón de tener pendiente una orden de arresto de Puerto Rico es arrestado fuera de nuestra jurisdicción. La ley nada dice sobre el cómputo de los términos allí dispuestos para casos en los cuales el liberado no esté bajo la custodia de las autoridades locales. Luego de realizar una extensa investigación, tampoco hemos encontrado jurisprudencia de las jurisdicciones norteamericanas que trate sobre situaciones análogas a ésta. Sin embargo, un análisis literal y contextual de la Ley Núm. 118, *supra*, demuestra que la intención del legislador, al aprobar esta legislación, fue establecer un procedimiento de revocación de libertad para liberados que estuviesen en la isla bajo la custodia de las autoridades del país, por lo cual los términos establecidos en el Art. 5 de esa ley, *supra*, deben computarse a partir del momento cuando efectivamente las autoridades de Puerto Rico tengan la custodia del liberado.

■ Los procedimientos de revocación de la libertad bajo palabra establecidos por ley son de tal naturaleza que pueden cumplirse de manera propia, sólo cuando el liberado se encuentre detenido en la jurisdicción territorial de Puerto Rico y bajo la custodia de sus autoridades

gubernamentales. Si el liberado se encuentra detenido fuera del país, es virtualmente imposible para la Junta cumplir cabalmente con los términos y las disposiciones de la ley. En primer lugar, la ley dispone que si un liberado ha violado las condiciones de su libertad, la Junta debe ordenar su arresto. Evidentemente tal orden de arresto puede ejecutarse con entera certeza y autoridad solamente si el liberado está en Puerto Rico. La Junta no siempre tiene la facultad para *compeler* un arresto extraterritorialmente, como la tiene de ordinario dentro de la jurisdicción de Puerto Rico.(²) En segundo lugar, una vez el liberado es arrestado por orden de la Junta, la ley sobre el procedimiento de revocación de libertad a prueba dispone que el liberado deberá ser ingresado en la institución penal que designe el Administrador de Corrección. Obviamente, mientras el liberado se encuentre fuera de Puerto Rico, tampoco puede cumplirse con éste otro mandato legislativo. El Administrador de Corrección no tiene facultad para indicarle a las autoridades de otras jurisdicciones en cuál institución debe ser ingresado el liberado. En tercer lugar, la Ley Núm. 118, *supra*, considera que mientras se desarrolla el procedimiento de revocación, el liberado continuará detenido sujeto a la autoridad de la Junta. Esto, de nuevo, es posible sólo si la persona está en Puerto Rico. Finalmente, mientras el liberado se encuentra detenido en otra jurisdicción no puede comparecer expeditamente a las vistas de revocación que dispone la ley, que deben celebrarse taxativamente dentro de los breves tér-

---

(²) Es un principio de Derecho Internacional ampliamente reconocido, que la jurisdicción de un estado soberano está limitada a las personas y a los bienes dentro de su demarcación territorial. *Pennoyer v. Neff*, 95 U.S. 714 (1877).

En este caso el estado de Nueva York arrestó al liberado y lo mantuvo detenido por éste tener pendiente en Puerto Rico una orden de arresto en su contra. Sin embargo, en otras jurisdicciones fuera de Estados Unidos es posible que dichos procesos no se hubieran podido realizar con la efectividad y la cooperación demostrada por el estado de Nueva York. No obstante los acuerdos de reciprocidad que puedan existir entre Puerto Rico y otras jurisdicciones, son tantos los lugares a donde puede huir un liberado que no hay certeza de que las órdenes emitidas en la isla puedan seguirse fuera de sus límites territoriales.

minos que dicha ley establece. Problemas de trámites judiciales en la jurisdicción donde está el liberado, problemas de transportación y otros evidentes impiden que tales vistas puedan celebrarse con la comparecencia del liberado con la rápidez que requiere la ley, que evidentemente se aprobó considerando que éste estaría en Puerto Rico, por lo que sería posible realizarlas expeditamente.

■ Contrario a lo que alega el apelante, la Junta no tenía autoridad plena sobre el liberado mientras éste se encontraba detenido en el estado de Nueva York. Mientras el liberado estaba en dicha jurisdicción, la Junta no tenía poder por sí sola ni para encarcelarlo, ni excarcelarlo de las instituciones penales de ese estado, ni poder para llevar a cabo expeditamente los otros procedimientos de revocación que fija la ley. El apelante sólo quedaría bajo la plena autoridad de la Junta desde que fuera extraditado a Puerto Rico, lo cual no ocurrió hasta el 7 de junio de 1990. Por lo tanto, lo que las autoridades del estado de Nueva York hicieron con el liberado dentro de su jurisdicción no podía afectar los términos del procedimiento de revocación de la Ley Núm. 118, *supra.*

■ Concluir lo contrario no tendría sentido jurídico alguno. Equivaldría a resolver que los términos y el procedimiento fijados por ley son siempre de inexorable cumplimiento por la Junta, aunque ésta justificadamente no pueda hacerlo. Tal resultado no sólo es contrario a cualquier lógica jurídica, sino que tampoco es consistente con el designio legislativo que claramente se trasluce del contexto de esta ley. Al interpretar un estatuto tenemos la obligación de evitar los resultados irrazonables y las consecuencias absurdas, obviando siempre las interpretaciones irreales. *Cerame-Vivas v. Srio. de Salud,* 99 D.P.R. 45 (1970); *M. Mercado e hijos v. Junta Azucarera,* 95 D.P.R. 852 (1968); *Esso Standard Oil v. A.P.P.R.,* 95 D.P.R. 772 (1968); *Álvarez & Pascual, Inc. v. Srio. de Hacienda,* 84 D.P.R. 482 (1962). En este caso, el hecho central en

torno al cual debe girar nuestra decisión es que el liberado abandonó la jurisdicción de Puerto Rico sin la autorización debida de la Junta, en abierta violación a las condiciones de su libertad bajo palabra. Sería absurdo e irreal suponer que el legislador consideró que los términos señalados en la Ley Núm. 118, *supra*, serían aplicables a esta situación, en la cual existe una crasa violación a una de las condiciones más fundamentales que se tuvo en cuenta al conceder al liberado su libertad bajo palabra, que es el requisito de permanecer dentro de la jurisdicción. Al incurrir en dicha conducta, el apelante mismo provocó que surgiera la necesidad de realizar el trámite complejo de extradición, de cuya tardanza ahora se queja. El apelante pretende que ahora se le acredite —como parte de la sentencia cumplida— los años durante los cuales vivió fuera de Puerto Rico en violación a las condiciones de su libertad bajo palabra. Aun cuando fuera cierta la imputación de negligencia que hace el apelante contra el Estado por no haber completado ciertos trámites del proceso de extradición a tiempo, que provocaron su excarcelación por las autoridades de Nueva York, esta falla no justifica que se exonere al apelante del cumplimiento de su pena.(³) El apelante violó las condiciones de su libertad al irse a Nueva York y allá permaneció a sabiendas de que se le había requerido su presencia en Puerto Rico. Dadas las circunstancias específicas del caso, debe considerarse que el peticionario se encuentra en una situación análoga a la de un "prófugo de la justicia" para los efectos de aplicar la norma de *Pueblo v. Rivera Rivera*, 110 D.P.R. 544, 545 (1980), donde expresamos que "[l]os

---

(³) No constan en autos las razones concretas debido a las cuales se dilató tanto el procedimiento de extradición del liberado. Cabe la posibilidad que se debiera a la lentitud de los trámites por parte de las autoridades de Puerto Rico, en cuyo caso procede al menos una advertencia a éstas para que sean diligentes al realizar dichos trámites. Aunque el legislador no dispuso términos específicos para llevar a cabo el procedimiento de extradición, como al liberado le cobijan las garantías del debido proceso de ley, el Estado debe ser tan diligente como sea posible cuando los procedimientos de extradición tratan sobre una persona a quien se le intenta revocar su libertad a prueba. El Estado no debe incurrir en dilaciones injustificadas que conceblemente puedan dar lugar a violaciones del debido proceso de ley.

fugitivos, al menos mientras continúe su condición de tales, renuncian su derecho a que una corte de apelación considere sus planteamientos sobre la base de una justicia que ellos han decidido burlar".

## III

Contrario a lo que el apelante expone en su alegato, la decisión emitida en *Hernández Cuevas v. Presidente J.L.B.P.*, 123 D.P.R. 284 (1989), no dispone de la controversia en el caso de autos. Las situaciones de uno y otro caso son claramente distinguibles. En *Hernández Cuevas v. Presidente J.L.B.P.*, supra, no estaba en cuestión el asunto ante nos ahora. Allí el apelante había estado fuera de la jurisdicción durante varios años e incluso había sido detenido por otro delito. A su regreso a Puerto Rico obtuvo conocimiento de una orden de arresto en su contra emitida anteriormente y acudió voluntariamente a entregarse a la policía local, donde fue detenido. Estando ya el apelado *en Puerto Rico*, correspondía a la Junta celebrar la vista de investigación en los próximos sesenta días después de esta detención o de lo contrario excarcelar al liberado y celebrar la vista dentro de los próximos noventa días. No obstante, dicha vista no se celebró sino hasta pasados 153 días desde que el apelante se entregó, fue detenido y encarcelado. El apelante cuestionó la jurisdicción de la Junta por no haber cumplido con los términos establecidos en la ley para celebrar las vistas correspondientes y revocar la libertad bajo palabra *a partir de su entrega y detención*. Determinamos, entonces, que efectivamente habían transcurrido los términos de la ley sin que la Junta actuara, por lo que las infracciones a las condiciones de la libertad bajo palabra se tenían que tomar por no cometidas, se archivó la querella y se excarceló al apelante.

En el caso que nos ocupa, el apelante no se sometió voluntariamente a las autoridades locales. Tuvo que ser extraditado de Nueva York a la isla y no fue hasta el 7 de junio de 1990 cuando fue ingresado a la cárcel. Una vez en Puerto Rico, comenzó a correr el término de los sesenta días que dispone la ley para celebrar la vista sumaria inicial. Ésta fue celebrada oportunamente cuatro días después de su llegada a la Isla. A partir del 13 de junio de 1990, cuando el liberado radicó su petición de hábeas corpus ante el tribunal de instancia, se interrumpieron los procedimientos ante la Junta, por lo que ésta todavía retenía jurisdicción para actuar en este caso.

La fecha a partir de la cual deben computarse los términos dispuestos por ley es el 7 de junio de 1990, en la cual el apelante fue extraditado e ingresado en una cárcel de Puerto Rico. La vista sumaria inicial se celebró el 11 de junio de 1990, obviamente dentro de los térmimos dispuestos por ley.

Por las razones anteriormente expuestas, *se devuelve el caso a la Junta de Libertad bajo Palabra para que se continúen los procedimientos correspondientes.*