*777 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos, por derecho propio, el Sr. Carlos Montaño Díaz (el Sr. Montaño o el peticionario). Nos solicita que expidamos un auto de mandamus dirigido a la Junta de Libertad Bajo Palabra (la Junta) y a la Administración de Corrección (la Administración). En cuanto a la primera, nos solicita que le ordenemos que cumpla su deber ministerial de asumir jurisdicción sobre su caso, pues cumplió el tiempo necesario de su sentencia para ser considerado. Respecto a la Administración, el deber ministerial invocado es que le provea las terapias de “Aprendiendo a Vivir sin Violencia ” y que le notifique el resultado de su evaluación sicológica.
Analizada tanto la Petición de Mandamus como el derecho aplicable, resolvemos denegar el recurso de mandamus solicitado.
I
El Sr. Montaño se encuentra confinado en el Campamento Zarzal de Río Grande bajo la custodia de la Administración. El 26 de junio de 2003, fue sentenciado por el Tribunal de Primera Instancia, Sala Superior de Carolina, a cumplir 13 años de cárcel por violar el Artículo 173B (robo de vehículo de motor) y el Artículo 180 (daños agravado) del Código Penal. En su escrito, el peticionario indica que lleva encarcelado cinco (5) años y (5) meses y que el 25 de diciembre de 2006 cumplió el mínimo de la aludida sentencia a los fines de ser considerado para la libertad condicionada.
El 10 de julio de 2008, el Sr. Montaño presentó la Petición de Mandamus o Hábeas Corpus de epígrafe. Alegó que la Junta había incumplido su deber ministerial de no tomar un acuerdo en su caso y notificarle la contestación a su solicitud de libertad condicionada. Adujo que el Negociado de Evaluación y Asesoramiento de la Administración (NEA) no le había proporcionado las terapias “Aprendiendo a Vivir Sin Violencia ” y que tampoco lo había enviado al sicólogo a que le hiciera la evaluación sicológica de 560 preguntas.
Con relación a las terapias, puntualizó, además, que fue dado de baja de ellas por ausencias que, según alega, fueron justificadas. Intima que como castigo no lo han vuelto a matricular.
De otro lado, el peticionario reclamó que no le han notificado el resultado de la evaluación sicológica que le hicieron y que, a pesar de haber extinguido el 70% de su sentencia, no ha sido referido a los programas y desvíos del Programa PIRCO de la Administración.
Por otra parte, aseveró en su Petición que ha agotado los remedios administrativos por medio de su técnico socio penal a los fines de que ésta hiciese las gestiones pertinentes con la Junta y la Administración. Señala que tales gestiones, que han durado aproximadamente dos años, no han tenido éxito. También acreditó que ha hecho *778 uso del Programa de Remedios Administrativos que aplican al NEA, la Junta y la Administración por medio del “Reglamento para Atender las Solicitudes de Remedios Administrativos Radicados por los Miembros de la Población Correccional”, Reglamento Núm. 7219 de 26 de septiembre de 2006.
Atendida la petición de autos, el 11 de julio de 2008 emitimos Resolución por medio de la cuál denegamos el auto de habeas corpus solicitado. Además, concedimos a la Junta y la Administración un plazo de 30 días para que se expresaran respecto al recurso de mandamus.
Oportunamente, el 20 de agosto de 2008, la Oficina del Procurador General, en representación de la Junta y la Administración, presentó Escrito en Cumplimiento de Orden y Solicitud de Desestimación (Escrito en Cumplimiento de Orden). En esencia, alegó que el recurso debía ser desestimado por prematuro y porque no existe un deber ministerial incumplido.
Con el beneficio de las posturas de ambas partes, pasamos a resolver.
II
El Artículo 649 del Código de Enjuiciamiento Civil, 32 L.P.R.A. Sección 3421, define el mandamus como un auto altamente privilegiado dirigido a alguna persona o personas naturales, a una corporación o a un tribunal de menor jerarquía, requiriéndoles el cumplimiento de algún acto expresado en el auto y que esté dentro de sus atribuciones o deberes. Dicho auto no confiere nueva autoridad y la parte a quien obliga deberá tener la facultad de poder cumplirlo.
Tanto la jurisprudencia como el Artículo 650 del Código de Enjuiciamiento Civil, 32 L.P.R.A. Sección 3422, establecen que para obligar al cumplimiento de un deber por medio del auto de mandamus es necesario que el solicitante demuestre que el funcionario está obligado al cumplimiento de un acto que la ley particularmente ordena como un deber resultante de un empleo, cargo o función pública. El mandamus sólo procede para exigir el cumplimiento de un deber impuesto por ley, es decir, un deber calificado como ministerial, que no permite discreción en su ejercicio, sino que es mandatorio e imperativo, Noriega v. Hernández Colón, 135 D.P.R. 406, 447-448 (1994); Hernández Agosto v. Romero Barceló, 112 D.P.R. 407, 418 (1982).
El ámbito de lo que constituye un deber ministerial ha sido delimitado por la jurisprudencia y trata de un acto en cuya ejecución no cabe ejercicio de discreción alguna por parte de la persona que viene obligada a cumplirlo. Álvarez de Choudens v. Tribunal Superior, 103 D.P.R. 235, 242 (1975). Esto es así, debido a que “el auto no puede tener dominio sobre la discreción judicial". Artículo 650 del Código de Enjuiciamiento Civil, supra.
También existen otras limitaciones a la expedición del mandamus. Por ejemplo, el auto no puede ser emitido en aquellos casos en que el peticionario tiene a su alcance otro remedio legal adecuado. Artículo 651 del Código Enjuiciamiento Civil, 32 L.P.R.A. Sección 3423; Hernández Agosto v. Romero Barceló, supra, a la página 418; Dávila v. Superintendente de Elecciones, 82 D.P.R. 264, 274 (1960). El objeto del mismo no es reemplazar remedios legales, sino suplir la falta de ellos. Además, la naturaleza altamente privilegiada del recurso conlleva que el mismo no proceda como cuestión de derecho, sino que su expedición descanse en la sana discreción del tribunal. Báez Galib y otros v. C.E.E. II, 152 D.P.R. 382 (2000). La norma es clara al establecer que para mover la discreción de un tribunal hacia la expedición de un mandamus, no es suficiente que el promovido tenga el deber ministerial alegado, sino que el promovente también debe tener un derecho definido a lo reclamado. Espina v. Calderón, Juez, y Sucn. Espina, Int., 75 D.P.R. 76, 84 (1953). El derecho del promovente y el deber del demandado deben surgir en forma clara y patente. Hernández Agosto v. Romero *779 Barceló, supra, a la página 418. El auto procede cuando el derecho a exigir la inmediata ejecución de un acto es evidente y no hay excusa para no ejecutarlo. Regla 55 de Procedimiento Civil, 32 L.P.R.A. Apéndice III.
B
Por otro lado, la Ley Núm. 116 de 22 de julio de 1974, según enmendada, 4 LPRA Sec. 1101 et seq., que creó la Administración de Corrección, dispone que ésta “administrará un sistema correccional integrado e implantará enfoques para estructurar formas más eficaces de tratamiento individualizado estableciendo o ampliando programas de rehabilitación en la comunidad4 LPRA Sec. lili. Entre las facultades y poderes conferidos a la Administración de Corrección está la administración de los servicios que requieren los clientes en los programas de supervisión electrónica, libertad a prueba, medidas de seguridad y libertad bajo palabra que están bajo su custodia y supervisión. A tales fines, se toma en consideración, además, las condiciones impuestas por la Junta, los términos de la sentencia o medidas de seguridad impuestas por el tribunal, según sea el caso. Es la Administración de Corrección quien está llamada a realizar las investigaciones y rendir los informes necesarios sobre la conducta y el proceso emocional y mental del cliente y realizar las evaluaciones requeridas manteniendo una coordinación efectiva con la Junta o el tribunal, según sea el caso. 4 LPRA Sec. 1112(m), según enmendada.
C
Cónsono con lo anterior, el sistema de libertad bajo palabra en Puerto Rico está regulado por la Ley Núm. 118 de 22 de julio de 1974, según enmendada. 4 LPRA See. 1501 et seq. A tenor de ella, se permite que una persona convicta y sentenciada a un término de reclusión cumpla con la última parte de su sentencia fuera de la institución penal, sujeto al cumplimiento de las condiciones impuestas. Así, la Junta es el organismo que le corresponde evaluar y decidir sobre la concesión y revocación del privilegio de libertad bajo palabra armonizando el interés del Estado en la rehabilitación del convicto, el bienestar general y la protección de las víctimas del delito. Véase Art. 3(a) de la Ley Núm. 118, supra. 4 LPRA See. 1503.
Conforme a su ley habilitadora, la Junta posee discreción para conceder la libertad bajo palabra a cualquier persona recluida en las instituciones penales de Puerto Rico, siempre que no se trate de los delitos excluidos de dicho beneficio y que la persona hubiese cumplido el término mínimo dispuesto por ley. 4 LPRA See. 1503. Toro Ruiz v. JLBP y otros, 134 DPR 161, 166 (1993); Ortiz v. Alcaide Penitenciaria Estatal, 131 DPR 849, 858 (1992).
Para complementar las disposiciones de su ley habilitadora, la Junta aprobó el Reglamento Núm. 6866 de 23 de septiembre de 2004 titulado Reglamento de la Junta de Libertad Bajo Palabra (el Reglamento). En su Artículo 9, el Reglamento desglosa los documentos a ser considerados al tomar una determinación respecto a la concesión de libertad bajo palabra al solicitante. El referido Artículo dispone lo siguiente:

“Al considerar un caso para libertad bajo palabra, la Junta tendrá ante sí los siguientes documentos, según certificados por la Administración de Corrección:

1. La totalidad del expediente penal y social del confinado.

2. La hoja de liquidación de sentenciáis) que cumple el confinado.

3. El informe de libertad bajo palabra sometido por el Programa de Comunidad de la Administración de Corrección, incluyendo los siguientes datos:

a. Verificación de residencia fija o alternada.

b. Idoneidad del amigo y consejero.

*780 c. Oferta de empleo o plan de estudio.

d. Historial de tratamientos recibidos para condiciones de salud, tales como para combatir la adicción a drogas, el alcoholismo, problemas de salud mental o física, o combinación de cualquiera de ellas.

e. Naturaleza y circunstancias del delito o los delitos por los cuales cumple sentencia.

f. Historial social, educativo, laboral, médico [del] peticionario.

g. Opinión de la víctima y su familia.

h. Opinión de la comunidad donde va a residir el peticionario de ser considerada la solicitud favorable.

i. Historial de ajuste institucional.

j. Certificación del registro de su nombre, dirección y demás datos en el Registro de Personas Convictas por Delitos Sexuales, Violentos y Abuso contra Menores que se crea por la Ley Núm. 28 de 1 de julio de 1997, cuando el solicitante haya sido convicto de algunos delitos enumerados en el Artículo 3 de dicha Ley.

k. Historial de antecedentes penales.

4. Informe para posible Libertad Bajo Palabra (FEI-1).

5. En aquellos casos en que aplique:

a. Certificación del ADN conforme a la Ley Núm. 175 de 24 de julio de 1998.

b. Denuncias y Sentencias.

c. Informe psicológico o siquiátrico.

d. Aceptación o rechazo de Programa de Reprocidad.

e. Certificación del pago para compensación para víctimas de delitos, Ley Núm. 183 de 29 de julio de 1992. ”

De otro lado, el Artículo 10, sec. 10.1, del Reglamento enumera los factores a ser considerados para la concesión o denegación de la libertad bajo palabra. Así establece lo siguiente:

“La Junta considerará los siguientes factores de riesgo y mérito en la concesión o denegación del privilegio, sin menoscabo a su discreción de incluir otros:

l. Las veces que el peticionario(a) haya sido convicto o sentenciado.

2. La edad del peticionario(a) cuando ocurrió la primera convicción por la cual se le considera.

3. La naturaleza, circunstancias y uso de fuerza o violencia en la comisión del delito por el cual cumple sentencia y de los delitos anteriores.

4. Dependencia de drogas o narcóticos, o de alcohol, y el tratamiento que hubiese recibido, o la necesidad del mismo.

*781
5. Si previamente se le ha revocado la libertad bajo palabra o sentencia suspendida y las circunstancias de la misma.

6. El historial de trabajos o estudios.

7. La existencia y viabilidad de un plan de salida en. Puerto Rico o en Estados Unidos de América.

8. Los ajustes que el confinado(a) haya efectuado en reclusión y el cumplimiento del plan de tratamiento que le haya trazado la Administración de Corrección.

. 9. El disfrute y uso que haya hecho del privilegio en sus pases en la comunidad.

10. La clasificación de custodia que tenga.

11. Una relación de liquidación de la sentencia o sentencias que cumple el confinado(a).

12. La totalidad del expediente penal, social y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado(a).

13. El historial de ajuste institucional y del historial social y psicológico del confinado(a), preparado por la Administración de Corrección y el historial médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.

14. La opinión de la víctima.

15. Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento. La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho.

16. El que se haya expedido en su contra Orden de Detención o Extradición de cualquier estado de los Estados Unidos de América o del Servicio de Inmigración o Naturalización. ”

Según la Sección 10.3 del Reglamento, la Junta puede requerir tomar en consideración cualquier otra información adicional a los factores antes mencionados, si así lo estima necesario.
Finalmente, la Sección 10.2 del Reglamento expone qué factores, tales como la reincidencia o la revocación de probatoria, no podrán constituir el criterio único para denegar una petición de libertad bajo palabra ante la Junta. Se aclara que la evaluación deberá ser hecha con atención al ajuste institucional del confinado(a) durante el término que ha sido privado de su libertad.
III
Hemos examinado con detenimiento los documentos provistos tanto por el Sr. Montaño como por la Oficina del Procurador General, en representación de la Junta y la Administración, bajo el crisol del derecho expuesto. Nuestro análisis nos lleva a concluir que el peticionario no ha aducido fundamentos con suficientes méritos que nos muevan a expedir el auto de mandamus solicitado, por lo que procede que sea denegado.
-Los- documentos obrantes en el expediente reflejan que el 1 de junio de 2005, la Administración refirió al Sr. Montaño a la Junta aun cuando éste no había cumplido el mínimo de su sentencia. [1]
De tales documentos surge también que durante el 2006, se dieron varias actuaciones de la Administración *782 y la Junta relacionadas con el caso del peticionario. El 2 de marzo de 2006, la Junta evaluó el expediente del Sr. Montaño y emitió una Resolución en la cual le solicitó a la Administración que le proveyera ciertos documentos relativos a éste, tales como: el Informe completo actualizado con plan de salida estructurado; el Informe de Ajuste y Progreso actualizado; las denuncias, sentencias y auto de prisión provisional; y copia de las certificaciones de las terapias tomadas. [2] En tal dictamen, que le fue notificado al peticionario el 19 de abril de 2006, la Junta también dispuso que volvería a considerar el caso al recibo de los aludidos documentos o en el mes de mayo de 2006, lo que ocurriese primero. [3]
Se desprende del expediente que el 27 de abril de 2006, el Comité de Clasificación y Tratamiento de la Administración convino enviar a la Junta el Informe de Ajuste y Progreso del peticionario, lo cual le fue notificado a éste el 27 de mayo de 2006. En tal Informe se señaló también que el Sr. Montaño no había ganado bonificaciones en el área escolar entre el 1ro de octubre de 2005 al 1ro de diciembre de 2005 por presentar ausencias injustificadas en el área escolar. [4]
El 16 de agosto de 2006, la Junta dirigió una orden a la Administración para que le remitiese los documentos que le había requerido en marzo. Entre los documentos solicitados estaban las denuncias y sentencias de los casos criminales del Sr. Montaño, la Certificación de Cumplimiento con la Toma de Muestra de ADN y la Certificación de “Drogas y Alcohol.” [5] Por último, la Junta informó que consideraría nuevamente el caso al recibo de la información solicitada o en octubre de 2006, lo que ocurriera primero. Esta orden le fue notificada al peticionario el 18 de septiembre de 2006.
Conforme a lo solicitado por la Junta, el Comité de Clasificación y Tratamiento de la Administración se reunió el 20 de septiembre de 2006 y acordó referir a la Junta la información que ésta le requiriera. El peticionario fue notificado ese día de este acuerdo.
Así las cosas, el 4 de diciembre de 2006, la Junta emitió una Resolución en la que resolvió no conceder el beneficio de libertad bajo palabra al Sr. Montaño. Entre sus determinaciones de hechos, concluyó que el peticionario estaba clasificado en custodia mediana y no disponía de recursos para su plan de salida en el área de amigo consejero y empleo. También estimó como hecho probado que éste evidenciaba "... conducta inaceptable en el área escolar, por salir sin autorización del salón, conducta que ha sido repetitiva en los últimos meses”. [6] Finalmente, determinó que el Sr. Montaño, "... salió Incur so en la Querella #311-06-422 por ruidos excesivos e innecesarios ... el 12 de junio de 2006”. [7] La aludida resolución fue notificada al peticionario el 21 de marzo de 2007.
No obstante lo así resuelto, la Junta determinó que volvería a considerar el caso del peticionario para diciembre de 2007, fecha en la que también la Administración le debía proveer un Informe Actualizado de Ajuste y Progreso, un Informe Breve de Libertad Bajo Palabra con plan de salida corroborado y el Expediente Social y Criminal. [8]
Surge del expediente que en la reunión celebrada el 17 de septiembre de 2007, el Comité de Clasificación y Tratamiento de la Administración acordó referir a la Junta el Informe de Ajuste de Progreso actualizado del Sr. Montaño.
Por otro lado, el expediente demuestra que la División de Evaluación y Asesoramiento del Negociado de Rehabilitación y Tratamiento del Departamento de Corrección y Rehabilitación (NRT) emitió una Evaluación Psicológica del peticionario fechada 20 de noviembre de 2007. En ésta recomendó que el Sr. Montaño recibiera terapias sicológicas. [9] En su escrito ante nos, las recurridas aclaran que el Sr. Montaño fue matriculado el 30 de enero de 2008 en las terapias “Aprendiendo a Vivir sin Violencia”. [10]
Con relación a tales terapias, del récord se desprende que en la carta de 4 de marzo de 2008 dirigida a la *783 técnico socio penal, Sra. Doris Cabán, la NRT indicó que el Sr. Montaño se había ausentado de las terapias en dos ocasiones. Allí también se le advirtió que si faltaba a una tercera sesión, sería dado de baja por ausentismo. [11] De dicho documento surge una anotación a manuscrito firmada por la Sra. Cabán que indica que al peticionario se le orientó en cuanto a su asistencia al Programa de Terapias y que éste se comprometió a no faltar al mismo. [12] No obstante, los autos reflejan que el Sr. Montaño se ausentó nuevamente, por lo que el 9 de abril de 2008 fue dado de baja del Programa de Terapias. [13]
A pesar del ausentismo exhibido por el Sr. Montaño, el expediente demuestra que el 20 de mayo de 2008 fue nuevamente orientado en cuanto a su asistencia a las terapias. Ello, como resultado de la reunión celebrada en tal día por el Comité de Clasificación y Tratamiento de la Administración. [14]
El 17 de junio de 2008, la Junta emitió Resolución, recibida por el peticionario el 9 de julio de 2008, en la que expuso que consideró el caso del Sr. Montaño y señaló que acordó posponer la decisión del caso hasta que se sometiera una evaluación sicológica reciente de éste proveniente del NRT y un nuevo candidato a amigo consejero viable. [15] Finalmente, dispuso que se consideraría el caso en septiembre de 2008.
En comunicación escrita de 30 de julio de 2008, la Administración le envió a la Junta los documentos previamente solicitados por ésta. [16] El 9 de julio de 2008 también le envió otra carta en la que incluyó información sobre el candidato a amigo y consejero del peticionario y acompañó la evaluación sicológica del NRT. Además, le explicó lo acaecido con el peticionario respecto a las terapias “Aprendiendo a Vivir Sin Violencia” y las reiteradas ausencias de éste, al punto de haberlo dado de baja de las mismas. [17]
En tanto, el 27 de junio de 2008, el Sr. Montaño presentó la Solicitud de Remedios Administrativos Núm. QZA-394-08. En tal escrito pidió que le indicaran las razones por las cuales la Junta no había emitido una Resolución en su caso, pues había cualificado para el privilegio de libertad bajo palabra desde el 25 de diciembre de 2006. [18]
En Respuesta emitida el 5 de agosto de 2008, la División de Remedios Administrativos de la Administración le informó que su caso estaba siendo evaluado por la Junta. [19]
Luego, se suscitaron en dicho foro administrativo otras solicitudes del Sr. Montaño para que se le entregara copia de la evaluación sicológica realizada por el NEA, a lo cual la Sra. Rosa H. Cruz Soto en Respuesta de 5 de agosto de 2008 informó que la evaluación se encontraba en el expediente social. [20]
No obstante, con fecha 1ro de julio de 2008, el peticionario presentó una segunda Solicitud de Remedio ante la Administración a la que se le asignó el número QZA-396-08. En ésta solicitó copia de la Evaluación sicológica de sobre 560 preguntas que el NEA le realizó en enero de 2008 y que aún no había recibido. [21] La Administración, en Resolución de 9 de julio de 2008, desestimó está solicitud por repetitiva.
Finalmente, el peticionario presentó una tercera Solicitud de Remedio el 28 de junio de 2008 en la que requirió de la División de Remedios Administrativos que le notificara el acuerdo que la Junta había tomado en su caso, ya que había transcurrido casi 2 años desde que había acudido ante el Oficial Examinador de la Junta. Esta Solicitud, la cual fue designada con el número QZA-397-08, también fue desestimada por repetitiva. Empero, se le informó que tan pronto se recibiera la respuesta de la Junta, se le entregaría. [22]
Así las cosas, el 10 de julio de 2008, el Sr. Montaño presentó el recurso de mandamus de autos en el que nos solicitó que ordenáramos a la Junta y a la Administración cumplir con su deber ministerial. No le asiste la razón.
Con relación a la Junta, el tracto procesal expuesto refleja que dicha agencia ha sido consistente en su *784 evaluación del caso del peticionario. El expediente demuestra que ese examen comenzó tan temprano como en marzo de 2006, y continuó por dos años hasta el 17 de junio de 2008, fecha en la que emitió la última Resolución por medio de la cual determinó que consideraría el caso del peticionario en septiembre de este año. Ello denota que la agencia ha estado activamente atendiendo el caso del Sr. Montaño, por lo que no ha incumplido su deber ministerial.
De otro lado, el Sr. Montaño tampoco tiene razón al requerirnos que emitamos un madamas para que la Junta de Libertad Bajo Palabra asuma jurisdicción sobre su caso. Este Tribunal está impedido de ordenar a la Junta que le conceda la libertad bajo palabra que interesa el Sr. Montaño sin más, ya que es a dicha agencia administrativa, por su pericia, a la que corresponde evaluar si el Sr. Montaño cumple los requisitos y demás criterios para ser acreedor de la libertad bajo palabra. Además, conforme a la Resolución de 17 de junio de 2008, dicha agencia aún retiene jurisdicción sobre el caso, pues dispuso que el caso del peticionario sería evaluado tan pronto se recibieran todos los documentos solicitados a la Administración.
Advertimos al Sr. Montaño que una vez la Junta emita un dictamen final respecto a su caso, el peticionario tendrá el derecho a solicitar la revisión judicial, si está inconforme con éste. Nótese que la revisión judicial es el remedio adecuado en ley para impugnar una decisión administrativa final por quien se siente afectado por ella.
Por otra parte, tampoco el peticionario tiene razón en su reclamo de mandamus en contra de la Administración en cuanto a que le provean las terapias “Aprendiendo a Vivir Sin Violencia”. Surge claramente del expediente que éste ha exhibido un patrón de ausentismo de dichas sesiones de terapias, lo que provocó que se le diera de baja de ellas. El que el peticionario no pudiera tomar tales terapias, se debió a su propia conducta. Por ende, somos del criterio que la Administración no incumplió deber ministerial alguno porque le proveyó las aludidas terapias al Sr. Montaño y éste las desaprovechó.
Con relación a la falta de notificación de su evaluación sicológica por la Administración, se desprende de los autos que en la Respuesta al Miembro de la Población Correccional emitida el 5 de agosto de 2008 por la Administración, en el caso QZA-395-08, se le informó al peticionario que ésta se encontraba en el expediente social. Si el peticionario no estaba de acuerdo con tal Respuesta, debió agotar el trámite administrativo que allí le fue advertido. No obstante, el Sr. Montaño falló en solicitar la revisión de tal dictamen mediante un Escrito de Reconsideración ante el Coordinador Regional.
Como se puede apreciar, el peticionario tuvo la oportunidad de obtener el remedio interesado en el caso de epígrafe por medio del agotamiento de remedios ante la Administración y no lo hizo. Por ende, no puede utilizar el recurso extraordinario del mandamus en su sustitución. El mandamus es un recurso extraordinario en equidad a ser utilizado en casos excepcionales cuando el curso ordinario de la ley resulta inadecuado. El caso de autos no es uno de éstos.
IV
Por los fundamentos expuestos, se deniega el recurso de mandamus solicitado.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 22

1. Escrito en Cumplimiento de Orden, pág. 3.

2. Escrito en Cumplimiento de Orden, págs. 3-5.

3. Id. Véase pág. 5 del recurso de donde surge que el Sr. Montafio fue notificado de dicha Resolución.

4. Apéndice del Escrito en Cumplimiento de Orden, pág. 6.

5. Id, págs. 7-8.

6. Apéndice del Escrito del Procurador General, pág. 10.

7. Id.

8 .Id.

9. Apéndice del Escrito en Cumplimiento de Orden, pág. 14.

10. Id, págs. 14 y 17. Véase además el Escrito en Cumplimiento de Orden, pág. 5.

11. Apéndice del Escrito en Cumplimiento de Orden, pág. 16.

12. Id.

13. Id, págs. 17-23.

14. Id, págs. 24 y 25.

15. Id, pág. 26.

16. Id, pág. 29.

17. Apéndice del Escrito en Cumplimiento de Orden, págs. 27-28.

18. Id, pág. 31.

19. Id, pág. 35.

20. Id, págs. 38 y 39.

21. Apéndice del Escrito en Cumplimiento de Orden, págs. 40-41.

22. Id., pág. 43.