Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| JUNTA DE LIBERTAD BAJO PALABRA | | |
|---|---|---|
| RECURRIDO | KLRA202500008 | *Revisión Judicial* procedente de la Junta de Libertad Bajo Palabra |
| v. | | Caso Núm. 141843 |
| TOMÁS PÉREZ RAMOS | | |
| RECURRENTE | | Sobre: No concesión del privilegio de Libertad Bajo Palabra – Reconsideración – Volver a considerar |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 24 de febrero de 2025.

### I.

El 7 de enero de 2025, el señor Tomás Pérez Ramos (el señor Pérez Ramos o recurrente), quien se encuentra privado de la libertad, presentó la *Petición de revisión administrativa* solicitando que revoquemos la *Resolución* emitida por la Junta de Libertad Bajo Palabra (JLBP o parte recurrida) emitida el 30 de septiembre de 2024, archivada el 29 de octubre de 2024 y notificada el 4 de noviembre de 2024.[1] En el dictamen emitido la parte recurrida determinó que no procedía concederle el privilegio de libertad bajo palabra.

El 22 de noviembre de 2024, el recurrente presentó *Moción de Reconsideración* ante la JLBP.[2] La agencia no se expresó en relación

---

[1] Apéndice de la Apelación, Anejo XI, págs. 43-47.
[2] Íd., Anejo XII, págs. 48-58.

a la misma dentro de los quince (15) días de presentada por lo que se entendió rechazada de plano.

El 16 de enero de 2025 emitimos una *Resolución* en la que le concedimos a la parte recurrida hasta el 6 de febrero de 2025 para presentar su oposición.

El 6 de febrero de 2025, la JLBP presentó *Escrito en cumplimiento de Resolución,* en que solicitó que devolviéramos el caso a la agencia para examinar nuevamente el criterio de hogar propuesto.

El 13 de febrero de 2025, el señor Pérez Ramos radicó *Moción Urgente* en que nos solicitó que revoquemos el dictamen emitido por la JLBP por haber sido emitida sin tomar en consideración la totalidad del expediente.

El 14 de febrero de 2025 emitimos una *Resolución* en que informamos al recurrente que pronto emitiríamos una determinación sobre los méritos del recurso.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso de epígrafe, y, en adelante, pormenorizaremos los hechos procesales atinentes a la *Petición de revisión administrativa.*

**II.**

El caso de marras tiene su génesis el 13 de septiembre de 2023 con la celebración de la *vista de consideración* del privilegio de libertad bajo palabra tras la solicitud del recurrente para que se le concediese el privilegio de libertad bajo palabra. Posteriormente, el 28 de septiembre de 2023, la Oficial Examinadora de la JLBP preparó el *Informe sobre del Oficial Examinador*[3] en que consignó las siguientes determinaciones de hecho:

> 1. Al momento de la evaluación del expediente, surge que la parte de epígrafe, no cuenta con casos ante los tribunales y

---

[3] Íd., Anejo 1, págs. 1-5.

demostrado una mejoría en su proceso de rehabilitación y en sus ajustes institucionales.

2. El peticionario se encuentra clasificado en custodia mínima desde el 31 de julio de 2015, conforme se desprende de su expediente criminal.

3. La parte peticionaria, ha demostrado tener un plan de salida estructurado en el área de Vivienda y tiene pensión del gobierno.

4. En el año 2013, completo el Programa Aprendiendo a Vivir sin Violencia

5. Le fue realizada la muestra del ADN, conforme lo requiere la Ley número 175 del 1998, según enmendada (no le pusieron fecha de la prueba realizada).

6. Cuenta con evaluación psicológica del 19 de octubre de 2018 (en ese entonces NEA), el 7 de agosto de 2023, se realizó el Informe Actualizado de la Evaluación Psicológica por parte del personal SPEA (Sección Programa de Evaluación y Asesoramiento).

7. El 3 de junio de 2018, el peticionario completo el Programa de Droga y Alcohol. El 19 de noviembre de 2013, completo el Programa de Patrones Adictivos.

8. El 19 de noviembre de 2013, el personal de Salud Mental evaluó al peticionario y este indico que no meritaba tratamiento en dicha área.[4]

Por ende, la Oficial Examinadora resolvió que el señor Pérez Ramos reúne todos los requisitos establecidos para beneficiarse de la libertad bajo palabra recomendó que se le concediera dicho privilegio. No obstante, el recurrente debía cumplir con el *Mandato de libertad bajo palabra.*[5]

El 17 de octubre de 2023, notificada el 6 de noviembre de 2023, la JLBP emitió una *Resolución*[6] en que repasó las circunstancias del señor Pérez Ramos consignando lo siguiente:

El caso de autos: fue llamado para la celebración de la vista de consideración de libertad bajo palabra el 13 de septiembre de 2023. El peticionario compareció, mediante el sistema de videoconferencia. EI mismo se encuentra cumpliendo su sentencia en el Centro Médico Correccional de Bayamón. Además, compareció la técnica de servicios socio penales (iss), Yarimar Pantojas García, quien tuvo ante sí, los expedientes del peticionario tanto en el ámbito social como en el criminal. Entonces, se procedió con la juramentación de las partes. El peticionario estuvo representado por la licenciada Yahaira Colón Rodriguez de la Sociedad para Asistencia Legal quien compareció a las facilidades de la Junta.

El peticionario cumple una sentencia de 15 años con 1 día, por el delito de Artículo 3.2 de la Ley 54-1989 de Violencia Domestica y portación Uso de la Ley de Armas, siendo sentenciado el 31 de octubre de 2011. Conforme al expediente, tentativamente, cumple su sentencia el 30 de noviembre de 2025. La Junta de Libertad Bajo Palabra (Junta) adquirió jurisdicción para considerar el caso para el

---

[4] Íd., pág. 1.
[5] Íd., pág. 5.
[6] Íd., Anejo II, págs. 6-9.

disfrute del privilegio de libertad bajo palabra desde el 19 de enero de 2019. [7]

A su vez, formuló las siguientes determinaciones de hecho:

1. De la investigación realizada por parte del personal del Programa de Comunidad de Bayamón del DCR, recibida en la Junta se determina que la vivienda sometida en el plan de salida no es viable. Se le orienta al peticionario a someter una vivienda alterna que no esté ubicada en el Municipio de Toa Baja.

2. El peticionario se encuentra clasificado en custodia mínima desde, el 31 de julio de 2015, no surge quejas ni querellas ni informes negativos conforme se desprende de su expediente criminal no cuenta con imposición de pena especial.

3. La parte peticionaria, cuenta con pensión por razones de salud del gobierno.

4. En el año 2013, completó el Programa Aprendiendo a Vivir sin Violencia del DCR.

5. Le fue realizada la muestra del ADN, conforme lo requiere la Ley 175 del 1998, según enmendada, (no incluyeron fecha de la prueba realizada).

6. Cuenta con evaluación psicológica del 19 de octubre de 2018 (en ese entonces NEA), el 7 de agosto de 2023, se realizó el informe actualizado de la Evaluación Psicológica por parte del personal SPEA (Sección Programa de Evaluación y Asesoramiento).

7. El 3 de junio do 2018, el peticionario completó el Programa de Droga y Alcohol. El 19 de noviembre de 2013, completó el programa de Patrones Adictivos ambos del DCR.

8. El 19 de noviembre de 2013, el personal de Salud Mental evaluó al peticionario y se indicó que no ameritaba tratamiento en dicha área. [8]

La JLBP determinó que el recurrente no cualificaba para la libertad bajo palabra debido a que el hogar sometido para el plan de salida no era viable. Consecuentemente, su caso iba a volver a ser considerado nuevamente en septiembre de 2024.[9]

El 13 de noviembre de 2023, el señor Pérez Ramos radicó una *Moción de Reconsideración*. En la *moción*, el recurrente cuestionó la determinación de la JLBP puesto que no indicaron el fundamento para decretar como no viable la residencia previamente propuesta. Consecuentemente, propuso como vivienda alterna la siguiente: Carretera 4417 K.M 3 Barrio Mamey, Aguada P.R 00602. Dicha residencia pertenece y en ella reside la hermana del recurrente, Yolanda Pérez Ramos.[10]

---

[7] Íd., pág. 6.
[8] Íd., págs. 6-7.
[9] Íd., pág. 8.
[10] Íd., Anejo III, págs. 10-24.

El 4 de diciembre de 2023, notificada el 12 de diciembre de 2023, la parte recurrida emitió una *Resolución* en la informó que acogió la *Moción de Reconsideración.*[11]

El 21 de diciembre de 2023, notificada el 3 de enero de 2024, la JLBP emitió una *Resolución Interlocutoria* decretando que procedía revisar el expediente a causa de que el recurrente propuso una vivienda alterna. A su vez, ordenó al Departamento de Corrección y Rehabilitación (DCR) que preparara a través del Programa de Comunidad Nivel Central un breve informe para corroborar si el hogar propuesto era viable conforme los criterios establecidos por la JLBP.[12]

El 9 de febrero de 2024 y recibida por la JLBP el 29 de febrero de 2024, el DCR radicó *Informe Breve de Libertad Bajo Palabra* confirmando que la vivienda propuesta pertenecía a la señora Yolanda Pérez Ramos, hermana del recurrente. Asimismo, indicó que la señora Yolanda Pérez Ramos estaba conforme en que el recurrente residiera en su propiedad. Además, el *Informe* reflejó que los vecinos no se oponen a que el señor Pérez Ramos resida en la mencionada propiedad.[13]

El 4 de abril de 2024, recibida el 5 de abril de 2024 por la parte recurrida, el señor Pérez Ramos presentó *Moción Informativa Urgente,* solicitando que la JLBP reconsidere su dictamen, pero que tomara en consideración la residencia propuesta en Aguada. [14]

El 29 de mayo de 2024, notificada el 31 de mayo de 2024, la parte recurrida emitió una *Resolución* en la que determinó que carecía de jurisdicción para intervenir al haber transcurrido ciento noventa y siete (197) días desde que la JLBP acogió la *Moción de Reconsideración* presentada por el recurrente.[15]

---

[11] Íd., Anejo IV, págs. 25-27.
[12] Íd., Anejo V, págs. 28-31.
[13] Íd., Anejo VI, pág. 32.
[14] Íd., Anejo VII, pág. 33.
[15] Íd., Anejo VIII, págs. 34-36.

El 6 de agosto de 2024, recibida el 16 de agosto de 2024 por la JLBP, la Técnica Socio Penal del señor Pérez Ramos presentó *Informe de Ajuste y Progreso a la Junta de Libertad Bajo Palabra* en la cual incluyó como la vivienda propuesta en el plan de salida del recurrente la residencia en el municipio de Aguada. Además, informó que el señor Pérez Ramos se mantuvo dentro de los mismos ajustes institucionales. [16]

El 20 de septiembre de 2024, el Oficial Examinador de la JLBP emitió una *Resolución*[17] en que formuló las siguientes determinaciones de hecho:

> 1. El peticionario, en el Informe de Ajuste y Progreso de este caso realizado el 7 de agosto de 2024 [h]a propuesto nuevamente la vivienda que en Resolución de no conceder el privilegio fechada el 17 de octubre de 2023 la Junta determino que ese hogar no es viable para pernoctar y orientó al peticionario a someter otra en la alternativa que no esté ubicada en el municipio de Toa Baja. Nuevamente determinamos que no es viable.
> 2. Informe de Ajuste y Progreso de este caso realizado el 7 de, agosto de 2024 indica que el peticionario continúa clasificado en custodia mínima desde el 31 de julio de 2015.
> 3. En el año 2013, completó el Programa Aprendiendo a Vivir sin Violencia del DCR y nuevamente fue reevaluado en octubre. de 2018.
> 4. Le fue realizada la muestra del ADN conforme lo requiere la Ley número 175 del 1998, según enmendada (no incluyeron fecha de la prueba realizada).
> 5. El 13 de junio de 2018, el peticionario completó el Programa de Drogas y Alcohol esto por su historial social. El 19 de noviembre de 2013, completó el Programa de Patrones Adictivos ambos del DCR.
> 6. El 19 de noviembre de 2013, el personal de Salud Mental evaluó al peticionario y se indicó que no ameritaba tratamiento en dicha área.
> 7. Según información que consta en el expediente de este caso el peticionario se encuentra laborando en el área de Proyecto Planilla.[18]

De manera sorpresiva, la JLBP razonó que el recurrente incumplió con los criterios para beneficiarse del privilegio de libertad bajo palabra al ratificar que la vivienda propuesta en el municipio de Toa Baja no era viable. A su vez, decretó que el caso iba a volver a ser considerado en septiembre de 2025.

---

[16] Íd., Anejo IX, págs. 37-38.
[17] Íd., Anejo X, págs. 39-42.
[18] Íd., págs. 39-40.

El 30 de septiembre de 2024, notificada el 4 de noviembre de 2024, la JLBP emitió una *Resolución*[19] en la misma adopto las mismas determinaciones de hecho del Oficial Examinador y consignó que:

> 8. Para efectos de un análisis de la totalidad del expediente, se evaluó la opinión de las víctimas, así como la naturaleza de las circunstancias de los delitos por los cuales cumple sentencia el peticionario.[20]

La JLBP determinó que el recurrente incumplió en proponer una residencia que no fuese en el municipio de Toa Baja. Empero, aludió que en el *Informe de Ajuste y Progreso* el señor Pérez Ramos nuevamente propuso la vivienda de Toa Baja. Por ende, denegó que el recurrente obtuviera el privilegio de libertad bajo palabra. En fin, la parte recurrida determinó que el caso sería tomado nuevamente en consideración para octubre de 2025.

Inconforme con el dictamen emitido, el 22 de noviembre de 2024, el recurrente presentó *Moción de Reconsideración* aduciendo que la JLBP debía enmendar el error al basar su dictamen en que este no propuso otra vivienda. Por consiguiente, la JLBP debía nuevamente emitir otro dictamen, pero basándose en la residencia propuesta ubicada en el municipio de Aguada. Asimismo, no había impedimento para que la parte recurrida le concediese al recurrente el privilegio solicitado.[21]

Debido a que la JLBP no respondió dentro del término establecido la referida *moción*, el recurrente acude ante nos señalando que la JLBP cometió el siguiente error:

> Abusó crasamente de su discreción la JLBP al denegar el beneficio al señor Tomás Pérez Ramos bajo el fundamento de que no posee un hogar viable, cuando-desde el 13 de noviembre de 2023-se presentó un nuevo hogar viable y el mismo fue positivamente corroborado por el DCR. Siendo esto así, dicha información fue obviada o descartada injustificadamente por la agencia conllevando que su determinación no esté basada en evidencia sustancial encontrada en el expediente y violentándose así el derecho constitucional del recurrente a un debido proceso de ley.

---

[19] Íd., Anejo XI, págs. 43-47.
[20] Íd., págs. 43-44.
[21] Íd., Anejo XII, págs. 48-58.

En síntesis, el recurrente alegó que este presentó ante la JLBP un plan de salida viable y según los criterios exigidos por la parte recurrida. Cónsono con lo anterior, este enmendó su solicitud para que fuese evaluada la residencia propuesta en el municipio de Aguada. No obstante, adujo que, en los trámites administrativos la JLBP fundamentó su decisión tomando en consideración la residencia equivocada. Empero, alegó que surgía del expediente que la residencia propuesta por este estaba ubicada en Aguada. Consecuentemente, la determinación de la agencia no estaba basada en evidencia sustancial del expediente.

El 6 de febrero de 2025, la JLBP presentó *Escrito en cumplimiento de Resolución* indicando que el recurrente solicitó residir en el municipio de Aguada de obtener el privilegio de libertad bajo palabra. Además, señalaron que, surgía del expediente administrativo que ordenaron a que se corroborara si la vivienda propuesta era viable. Sin embargo, en el *Informe del Oficial Examinador* y la *Resolución* de la JLBP del 30 de septiembre de 2024, erradamente imputó en sus determinaciones de hecho que el hogar propuesto por el recurrente era Toa Baja y no Aguada. Por otro lado, la JLBP reconoció que había documentos en el expediente administrativo que señalaban que la residencia propuesta era en el municipio de Aguada y que hay un documento que parece indicar que la perjudicada reside en Aguada. Consecuentemente, la parte recurrida solicitó que se devolviera el caso para examinarlo nuevamente.

El 13 de febrero de 2025, el recurrente presentó una *Moción Urgente* solicitando que no devolviéramos el caso a la parte recurrida debido que no corroboraron adecuadamente la vivienda que designó para ser considerada como parte de su plan de salida y donde alegadamente residía la víctima. En fin, solicitó que revoquemos el dictamen emitido por la parte recurrida ante su craso error.

### III.

### A.

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38 de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.*, (LPAU) establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor de esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. *Capó Cruz v. Junta de Planificación*, 204 DPR 581, 590-591 (2020). La *Revisión Judicial* es aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos que serán revisadas por el Tribunal de Apelaciones. Íd. 3 LPRA sec. 9671. La *Revisión Judicial* de determinaciones administrativas responde principalmente a delimitar la discreción de las agencias y velar que ejerzan sus funciones conforme a la ley. *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999). La intervención judicial se rige por los parámetros establecidos en la LPAU. *Edward Simpson v. Consejo de Titulares y Junta de Directores del Condominio Coral Beach*, 2024 TSPR 64. Asimismo, la sección 4.2 de la LPAU establece que,

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

Íd. 3 LPRA sec. 9672.

La LPAU dispone que una parte adversamente afectada por una orden o resolución de una agencia puede acudir en *Revisión*

*Judicial* al tribunal siempre y cuando haya agotado los remedios administrativos. ***Edward Simpson v. Consejo de Titulares y Junta de Directores del Condominio Coral Beach***, supra, pág. 64. A su vez, la sección 4.5 de la LPAU dispone que, las determinaciones de hechos de las decisiones de las agencias se mantendrán por el tribunal de basarse en evidencia sustancial que surja del expediente administrativo. Íd. 3 LPRA sec. 9675. Es menester señalar que, las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Íd. 3 LPRA sec. 9675. Los organismos administrativos merecen la mayor deferencia posible de los tribunales. ***Otero v. Toyota***, 163 DPR 716, 727 (2005). Tal deferencia se apoya en que las agencias administrativas tienen conocimiento experto y la experiencia especializada de los asuntos que le son encomendados. ***Otero v. Toyota***, supra, pág. 728. Al ejercer la función revisora, el tribunal está obligado a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuvo ante sí. ***Rebollo v. Yiyi Motors***, 161 DPR 69, 78 (2004). Por otro lado, las determinaciones de derecho, el tribunal tiene amplia autonomía para revisarlas en todos sus aspectos. ***Rebollo v. Yiyi Motors***, supra, pág. 77. Ejercitando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hecho realizadas por una agencia si están sostenidas por evidencia sustancial que surge del expediente. ***Otero v. Toyota,*** *supra*, pág. 728. El Tribunal Supremo ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". ***Otero v. Toyota,*** *supra*, pág. 728. La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. ***Otero v. Toyota,*** *supra*, pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente

que reduzca el valor probatorio. *Otero* **v.** *Toyota,* *supra,* pág. 728. Si la parte no demuestra otra evidencia sustancial que amerite alterar la determinación de la agencia, entonces no corresponde alterar la determinación de la agencia. *Otero* **v.** *Toyota,* *supra,* pág. 728. La deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *Otero* **v.** *Toyota,* *supra,* pág. 730.

**B.**

La Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico establece que, el Estado tiene la obligación de reglamentar las instituciones penales para que sirvan sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social. Art VI, Sec. 19, **Const. ELA** [Const. PR], LPRA, Tomo 1. En aras de cumplir con ese mandato, la Asamblea Legislativa ha promulgado varias figuras estatutarias y, entre ellas, se destaca por su relevancia la libertad bajo palabra, estatuida mediante la Ley de la Junta de Libertad Bajo Palabra, Ley Núm. 118 de 1974, según enmendada, 4 LPRA secs. 1501 *et seq.*, (Ley Núm. 118-1974). *Pueblo v. Álvarez Rodríguez*, 154 DPR 566, 570 (2001), citando a *Pueblo v. Zayas Rodríguez*, 174 DPR 530, 536 (1999). A esos fines, se le concedió la facultad para permitir la libertad bajo palabra a una persona recluida en las instituciones penales de Puerto Rico, sujeto a que cumpla el término mínimo dispuesto en ley que no se trate de los delitos excluidos para dicho beneficio. Art. 3 de la Ley Núm. 118-1974, *supra*, sec. 1503; *Pueblo*

*v. Contreras Severino*, 185 DPR 646, 658 (2012). Este beneficio busca principalmente ayudar a los confinados a reintegrarse positivamente a la sociedad, sin tener que estar encarcelados la totalidad del término de su sentencia. *Maldonado Elías v. González Rivera*, 118 DPR 260, 275 (1987). Es importante señalar que el beneficio de la libertad bajo palabra no es un derecho reclamable, sino un privilegio cuya concesión y administración recae en el tribunal o en la Junta. *Pueblo v. Negrón Caldero*, 157 D.P.R. 413 (2002). Empero, el conceder el privilegio, la JLBP puede imponer las condiciones que entienda necesarias, ya que el liberado bajo palabra tiene una libertad cualificada. Art. 3 de la Ley Núm. 118-1974, *supra*, sec. 1503. El convicto en libertad bajo palabra está sujeto a la custodia legal y la intervención de la JLBJ, debiendo cumplir con las condiciones que le hubiesen impuesto. *Toro Ruiz v. JLBJ*, 134 DPR 161, 167-169 (1993). En esa línea, el Art. 3-C de la Ley Núm. 118-1974, supra, sec. 1503c establece que:

> Una persona recluida en una institución carcelaria en Puerto Rico o en cualquier Programa de Desvío que cumpla con los requisitos establecidos por la Junta mediante reglamento o en esta ley, que muestre un alto grado de rehabilitación y que no represente un riesgo a la sociedad, podrá solicitar formalmente el privilegio de libertad bajo palabra dentro de la jurisdicción de la Junta mediante los mecanismos que disponga la misma, igualmente mediante reglamento. La solicitud por parte de la persona recluida conllevará el consentimiento de ésta para que la Junta pueda revisar y obtener copia de todos los expedientes sobre dicha persona en poder de la Administración de Corrección, a fin de que pueda ser considerada para la concesión de los privilegios contemplados en esta Ley.
> Recibida la solicitud, la Junta referirá la evaluación de la misma a uno de los paneles para el trámite y la adjudicación correspondiente.

Entretanto, sobre los criterios de elegibilidad a programas de libertad bajo palabra, el Art. 3-D de la Ley Núm. 118-1974, *supra* sec. 1503d, dispone:

> La Junta tendrá facultad para conceder el privilegio de libertad bajo palabra a una persona recluida en una institución penal en Puerto Rico, tomando en consideración los siguientes criterios:
> (1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.

(2) Las veces que el confinado haya sido convicto y sentenciado.

(3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.

(4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.

(5) El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.

(6) La edad del confinado.

(7) El o los tratamientos para condiciones de salud que reciba el confinado.

(8) La opinión de la víctima.

(9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.

(10) **Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.**

(11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento. La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho.

Énfasis suplido.

También, el procedimiento para la concesión o revocación de la libertad bajo palabra debe cumplir con ciertas salvaguardas procesales. *Maldonado Elías v. González Rivera*, supra, pág. 276. Por ende, la persona que goza de la libertad bajo palabra tiene una libertad condicionada o cualificada, la cual representa un interés de suficiente valor como para exigir las garantías mínimas del debido proceso de ley cuando se le intente despojar del privilegio. *Quiles v. Del Valle*, 167 DPR 458, 475 (2006). En consecuencia, nuestro más alto foro ha interpretado que: (1) las guías y los criterios que se utilizan para conceder el privilegio deben publicarse y hacerse disponible a los confinados; (2) debe realizarse una vista o evaluación de la solicitud; (3) de ordinario, el confinado debe tener acceso a la información que utiliza la JLBP para efectuar su decisión; y (4) al confinado se le debe informar por escrito las razones por las cuales se le deniega el privilegio. *Maldonado Elías v. González Rivera*, supra, pág. 276. Asimismo, también ha quedado pautado que, luego de concedido, para que se revoque el privilegio de libertad bajo palabra debe celebrarse: (1) una vista

preliminar para auscultar si hay causa probable para creer que el liberado ha violado las condiciones de la libertad bajo palabra, y (2) una vista final antes de la decisión definitiva sobre si la libertad bajo palabra será revocada. ***Maldonado Elías v. González Rivera***, supra, págs. 276-277.

## C.

El Art II. del Reglamento de la Junta de Libertad Bajo Palabra, Reglamento Núm. 9603 del 25 de septiembre de 2024, Junta de Libertad Bajo Palabra, pág. 4 dispone que;

> Mediante la adopción del presente Reglamento se establecen las normas procesales que regirán en el descargo de la función adjudicativa de la Junta. En este, se incorporan mecanismos para realizar los procesos dentro del término correspondiente salvaguardando los derechos reconocidos a los peticionarios como parte del debido proceso de ley.

La Sección 10.1 (A) del Art. X del Reglamento Núm. 9603, *supra,* págs. 36-48, expresa que la JLBP evaluará las solicitudes del privilegio, caso a caso, de acuerdo con el grado en que el confinado se encuentre en rehabilitación y el término que lleve confinado. La Sección 10.1 (B) del Art. X del Reglamento Núm. 9603, *supra*, págs. 36-48, establece los criterios que tomará en consideración la JLBP, estos son: (1) el historial delictivo; (2) una relación de liquidación de la sentencia que extingue el solicitante; (3) la clasificación de su custodia, el tiempo que lleva en ella y los cambios que haya tenido, si alguno; (4) la Junta no concederá la libertad bajo palabra cuando el peticionario se encuentre en custodia máxima, a menos que sea considerado por ser debidamente documentado por el Departamento de Justicia Federal o el Departamento de Justicia Estatal como cooperadores; (5) la edad del solicitante; (6) la opinión de la víctima; (7) el historial social del solicitante; (8) si cuenta con un plan de salida estructurado y viable respecto a la oferta de empleo y/o estudio, residencia y amigo consejero; (9) el historial de salud del solicitante.

Sobre la residencia, el inciso (8)(e) de la Sección 10.1(B) del Art. X del Reglamento Núm. 9603, *supra*, págs. 41-44, preceptúa:

i. <u>Todo peticionario tiene que indicar el lugar en el cual piensa residir de serle concedida la libertad bajo palabra, bien sea en una residencia o en un programa interno.</u>
(…)
v. Para determinar si la vivienda propuesta es viable, la Junta considerará, pero sin limitarse a, lo siguiente:
(a) Las características personales e historial delictivo de las personas con las cuales convivirá el peticionario en la vivienda, y como el peticionario se relaciona con estos.
(b) Opinión de la comunidad sobre la determinación de conceder el privilegio y de las personas con las cuales convivirá el peticionario.
(c) Condición de la planta física de la residencia y cantidad de habitantes en esta.
(d) Si la residencia propuesta está a 30 millas de distancia en vehículo de la residencia de la parte perjudicada.18
(e) Si existe algún impedimento en ley para que el peticionario resida en la vivienda propuesta.
(f) En los casos que aplique, si el peticionario se encuentra incluido en el contrato de vivienda o haya certificación de la administración correspondiente.
(g) Cualquier otra consideración que la Junta estime pertinente dentro de los méritos del caso individual.

(Subrayado nuestro).

**IV.**

En el caso de marras, la JLBP determinó que no procedía concederle el privilegio de libertad bajo palabra al recurrente toda vez que propuso una vivienda que había sido decretada como no viable.

Inconforme con el dictamen, el señor Pérez Ramos acudió ante nos solicitando que revoquemos la *Resolución* recurrida, puesto que propuso una residencia alterna en Aguada, para que fuese considerada y evaluada para que este pudiera gozar del privilegio de libertad bajo palabra. No obstante, la parte recurrida admitió ante esta Curia que erró en su determinación en denegar la libertad bajo palabra tras fundamentar su decisión en la residencia incorrecta. Más aún, reconoció que el expediente administrativo contiene un documento indicativo de que la parte perjudicada reside en Aguada. Adviértase que en esta etapa apelativa es que <u>por primera vez</u> la JLBP brinda dicha información, cuando siempre se le denegó el privilegio de libertad bajo palabra al recurrente porque la

perjudicada residía en Toa Baja, que fue el municipio que originalmente propuso residir. Tal proceder nos parece temerario. Por ende, nos solicitó que se devolviera el caso para emitir la *Resolución,* conforme a derecho.

Tras un análisis objetivo, cuidadoso y sereno del expediente, en correcta práctica adjudicativa apelativa determinamos que corresponde devolver el caso ante la agencia recurrida.

Adviértase que, la JLBP fundamentó erróneamente su determinación puesto que no fue diligente en evaluar la totalidad del expediente cuando de este surgía palmariamente que el recurrente propuso la residencia ubicada en el municipio de Aguada y no en Toa Baja, como erróneamente resolvió. A su vez, surge del expediente que dicha vivienda fue evaluada por el DCR y contaba con el aval de la hermana del recurrente y los vecinos. Asimismo, el recurrente cumplió con los requisitos estatutarios para ser considerado en beneficiarse del privilegio de libertad bajo palabra. Consecuentemente, la JLBP erró tras **no** basar su dictamen en la evidencia sustancial que surgía del expediente. Así las cosas, la JLBP está obligada en reevaluar el caso y determinar conforme a derecho si el recurrente cualifica para el privilegio de libertad bajo palabra.

Por los fundamentos antes expuestos, procede devolver el caso a la JLBP para que determine correctamente si el señor Pérez Ramos cumple con los criterios para recibir el privilegio de libertad bajo palabra, tras el calvario procesal al que ha sido sometido por la JLBP.

**V.**

Por los fundamentos pormenorizados, revocamos la *Resolución* recurrida y devolvemos el caso a la agencia para que resuelva conforme la residencia informada, si procede conceder el privilegio de libertad bajo palabra. Ante la dilación innecesaria en el

trámite del caso ante sí, tiene la JLBP diez (10) días, a partir de la notificación de la presente *Resolución* para cumplir con lo ordenado.

La JLBP puede continuar con los procedimientos sin tener que esperar por nuestro mandato.[22]

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[22] Véase Regla 84 (E) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXIIB, R. 84 (E).