Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| EDWIN CEDEÑO ORTIZ, T/C/P EDWIN ALEXANDER ORTIZ CEDEÑO<br><br>RECURRENTE<br><br>V.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>RECURRIDO | TA2025RA00277 | *Revisión Judicial* procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm. 148452<br><br>Sobre: No concesión del privilegio de Libertad Bajo Palabra - Reconsideración |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez, Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente

# SENTENCIA

En San Juan, Puerto Rico, a 21 de noviembre de 2025.

## I.

El 7 de octubre de 2025, el señor Edwin Cedeño Ortiz (señor Cedeño Ortiz o recurrente), quien se encuentra privado de libertad bajo la custodia del Departamento de Corrección y Rehabilitación (DCR), presentó, por derecho propio, una *Petición de Revisión Judicial Administrativa*, en la que solicitó que revoquemos la *Resolución* emitida por la Junta de Libertad Bajo Palabra (JLBP o recurrida) el 1 de julio de 2025.[1] Por medio de esta, la JLBP determinó que no procedía concederle el privilegio de libertad bajo palabra al recurrente y decretó la suspensión de todos los procedimientos relacionados a su caso hasta que cumpliera la totalidad de su Sentencia. Como fundamento, la recurrida sostuvo que el señor Cedeño Ortiz: (1) no demostraba compromiso con su

---

[1] Véase Apéndice del recurso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA). El recurso fue depositado en el correo postal para su envío el 2 de octubre de 2025. Véase Anejo 1 del recurso en SUMAC-TA.

proceso de rehabilitación y, (2) contaba con un *detainer* emitido por el Servicio de Inmigración y Control de Aduanas de Estados Unidos (ICE, por sus siglas en inglés), por lo que su liberación resultaba contraria a los estatutos migratorios federales.

El 20 de octubre de 2025, emitimos una Resolución en la que le concedimos al DCR un término de diez (10) días para que le proporcionara al recurrente la *Declaración en Apoyo de Solicitud para Litigar como Indigente* (*In forma Pauperis*) y nos la remitiera una vez completada.[2] Además, en aras de auscultar nuestra jurisdicción, le concedimos al DCR y a la JLBP hasta el 31 de octubre de 2025 para que nos certificaran la fecha en que se le notificó al recurrente la *Resolución* del 1 de julio de 2025, emitida por la JLBP.

El 31 de octubre de 2025, la JLBP presentó una *Moción en cumplimiento de Resolución* en la que informó que el recurrente fue notificado el 11 de septiembre de 2025 de la Resolución del 1 de julio de 2025.[3] Certificó, además, que el 8 de octubre de 2025, recibió la notificación de que el recurrente había sido notificado de la Resolución en cuestión.

Ese mismo día, el recurrente presentó una *Solicitud y declaración para que se exima de pago de arancel por razón de indigencia.[4]*

El 4 de noviembre de 2025, emitimos una Resolución en la que autorizamos al recurrente a litigar *In Forma Pauperis* y por derecho propio.[5] Además, tras auscultar nuestra jurisdicción para intervenir, le concedimos a la JLBP hasta el 13 de noviembre de 2025, para exponer su posición sobre los méritos del recurso.

---

[2] Íd., entrada núm. 2.
[3] Íd., entrada núm. 3. Véase Anejos de la moción.
[4] Íd., entrada núm. 4.
[5] Íd., entrada núm. 6.

El 13 de noviembre de 2025, la JLBP presentó un *Escrito en Cumplimiento de Resolución* en el que solicitó que confirmemos la determinación recurrida.[6]

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales pertinentes a la atención de la petición de revisión judicial.

**II.**

Según consta del expediente ante nuestra consideración, el recurrente cumple una Sentencia de cuarenta y dos (42) años de prisión por los delitos de Asesinato en Segundo Grado, Daño Agravado y Artículo 5.05 de la Ley de Armas. La JLBP adquirió jurisdicción sobre el recurrente a partir del 1 de abril de 2024, para considerar si éste cualifica para el privilegio de libertad bajo palabra. A esos efectos, el 1 de julio de 2025, la JLBP emitió una *Resolución.*[7] Mediante ésta, evaluó si el recurrente cumplía con los requisitos para disfrutar de dicho privilegio. Tras evaluar toda la documentación ante sí, referida por el DCR, la JLBP formuló las siguientes determinaciones de hechos:

1. Conforme se desprende del expediente, el peticionario se encuentra clasificado en custodia mínima.
2. Al peticionario le fue realizada la muestra de ADN, conforme establece la Ley Núm. 175 del 24 de julio de 1998, según enmendada, conocida como la *Ley del Banco de Datos de ADN de Puerto Rico.*
3. El 27 de marzo de 2018, completó el Programa de Tratamiento Psico-Educativo *Aprendiendo a Vivir Sin Violencia* ofrecido por la Sección de Programa de Evaluación y Asesoramiento (SPEA), el cual es necesario debido a la naturaleza de los delitos por los cuales cumple el peticionario.
4. El peticionario fue reevaluado psicológicamente por SPEA el 8 de febrero de 2024 y cuenta con el *Informe de evaluación psicológica.*

---

[6] Íd., entrada núm. 7.
[7] Véase Apéndice del recurso en SUMAC-TA.

5. **La parte peticionaria propuso residir con su hermano, Obed Cedeño Ortíz, en 2912 Marion Way, Haines City, Florida, EE. UU. Consta en el expediente administrativo el *Reply to Transfer Request* del 19 de junio de 2025, el cual expresa que el peticionario es aceptado en el estado.**

6. El peticionario presentó como candidato para fungir como amigo consejero a Jonathan Atanacio. No consta en el expediente corroboración de esta propuesta.

7. **Por otro lado, propuso como oferta de empleo laborar en Goleen Live Corp. en West Palm, Florida, EE. UU. No consta en el expediente corroboración de esta propuesta.**

8. **Ahora bien, el peticionario cuenta con un "detainer" de inmigración expedido el 16 de octubre de 2007 por el Departamento de Seguridad Nacional de los Estados Unidos ("Department of Homeland Security" (DHS)).**

9. Según el Informe de Ajuste y Progreso del 11 de febrero de 2025, el peticionario tiene problemas de autoridad, no sigue instrucciones y es poco cooperador a la hora del seguimiento.[8] (Énfasis nuestro).

En virtud de lo anterior, la JLBP concluyó que el recurrente no cualifica para beneficiarse del privilegio de libertad bajo palabra. La recurrida determinó que, concederle la libertad bajo palabra al recurrente burlaría los propósitos del Servicio de Inmigración y Control de Aduanas de Estados Unidos de proteger la seguridad pública a través de los *detainers* de inmigración. Además, razonó que la salida del recurrente, aún con un plan de salida completo y debidamente corroborado por el DCR, estaría en contravención con los estatutos federales que regulan la inmigración. Finalmente, por la falta de posibilidades para obtener el beneficio, la JLBP decretó la suspensión de todos los procedimientos relacionados al caso del recurrente hasta que cumpla la totalidad de su sentencia.

Surge del expediente, además, que el señor Cedeño Ortiz presentó, con fecha del 18 de agosto de 2025, una *Moción solicitando*

---

[8] Íd., pág. 1.

*reconsideración al amparo del artículo II, de la Carta de Derechos secciones 1, 7, 8 y 12 de la Constitución del Estado Libre Asociado de Puerto Rico.*[9] En ella, negó que no estuviese comprometido con su proceso de rehabilitación y aseguró que la determinación surgía como represalia por una demanda en daños y perjuicios que habría presentado contra una técnica sociopenal.

De otra parte, señaló que la suspensión de todos los procedimientos relacionados a su caso hasta la extinción de su pena violentaba la prohibición constitucional contra castigos crueles e inusitados, así como el principio de proporcionalidad de las penas. Por último, adujo que la JLBP había negado su petición debido a su estatus migratorio, lo que, a su entender, constituye discrimen por razón de raza, nacimiento, origen y condición social.

No surge del expediente que la JLBP hubiese atendido la solicitud de reconsideración del recurrente.

Aún inconforme, el señor Cedeño Ortiz acudió ante este Tribunal mediante el recurso que nos ocupa en el que formuló los siguientes señalamientos de error:

> Cometió error la [J]unta al no tomar en consideración el criterio número (10) en virtud del artículo 3 (d) de la Ley Núm. 118 de 22 de julio de 1974 según enmendada, 4 L.P.R.A., sec. 1501 *et seq.*

> Cometió error la [J]unta al darle más peso al informe de ajuste y progreso del 11 de febrero de 2025 ya que el mismo es contradictorio con toda la documentación que obra en el expediente del peticionario, esto es el criterio núm. (5).

> Cometió error la [J]unta al tomar en consideración que el peticionario cuenta con un "detainer" de inmigración debido estime conveniente dándole interpretación expansiva a los criterios estipulados bajo [el] art. 3 (d) de la Ley Núm. 118 supra.

Alegó que la JLBP erró al no tomar en consideración el lugar en que planea residir y la actitud de dicha comunidad. Sostuvo que los efectos del *detainer* pierden su validez dado que el estado de

---

[9] Véase Anejo 2 del recurso en SUMAC-TA.

Florida, EE. UU., aceptó su solicitud de traslado, cuyo documento contiene toda la información del estatus migratorio del recurrente. Además, adujo que la JLBP erró al darle más peso al *Informe de Ajuste y Progreso* que al resto de la documentación que obra en su expediente, documentación que alegadamente contradice dicho informe. Asimismo, argumentó que el hecho de estar en custodia mínima demuestra que está exhibiendo buena conducta y compromiso con el proceso de rehabilitación. Por último, manifestó que la determinación de la JLBP viola sus derechos constitucionales.

Por su parte, la JLPB presentó un *Escrito en cumplimiento de Resolución.* Arguyó que la agencia fundamentó su denegatoria en varios criterios a considerar y no solo en el *detainer* de inmigración. Adujo que la determinación recurrida es consecuencia de la aplicación general de un estatuto federal a toda persona que viole las condiciones impuestas para residir dentro de los límites territoriales de los EE. UU. Por lo cual, sostuvo que la *Resolución* recurrida es razonable y merece deferencia dado que encuentra apoyo en la normativa aplicable a los hechos que surgen del expediente del recurrente.

**III.**

**A.**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38 de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.,* (LPAU) establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor de esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. **Capó Cruz v. Junta de Planificación**, 204 DPR 581,

590-591 (2020); ***Rolón Martínez v. Supte. Policía***, 201 DPR 26, 35 (2018).

La LPAU dispone que una parte adversamente afectada por una orden o resolución de una agencia puede acudir en *Revisión Judicial* al tribunal siempre y cuando haya agotado los remedios administrativos. ***Edward Simpson v. Consejo de Titulares y Junta de Directores del Condominio Coral Beach***, 214 DPR 370, 378 (2024). Específicamente, la Sección 4.2 de la LPAU, *supra*, sec. 9672, dispone que una parte adversamente afectada por una orden o resolución final de una agencia podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, en un término de treinta (30) días contados a partir de la fecha del archivo en autos de copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de dicha ley (3 LPRA sec. 9655), cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

La revisión judicial de una decisión administrativa se circunscribe a analizar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho realizadas por la agencia estuvieron sustentadas por prueba sustancial que surgió del expediente administrativo, y (3) si, mediante una revisión completa y absoluta, las conclusiones de derecho fueron correctas. ***Otero Rivera v. Bella Retail Group, Inc.***, 214 DPR 473, 484-485 (2024); ***Rolón Martínez v. Supte. Policía***, supra, pág. 35-36.

Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la <u>razonabilidad</u> en la actuación de la agencia. ***Rebollo v. Yiyi Motors,*** 161 DPR 69, 76 (2004). Cónsono con ello, será necesario determinar si la agencia actuó de forma arbitraria, ilegal o de manera tan irrazonable que su actuación

constituyó un abuso de discreción. ***Rolón Martínez v. Supte Policía,*** supra; ***Rebollo v. Yiyi Motors,*** supra.

Por otro lado, la sección 4.5 de la LPAU dispone que, las determinaciones de hechos de las decisiones de las agencias se mantendrán por el tribunal de basarse en evidencia sustancial que surja del expediente administrativo. LPAU, *supra*, sec. 9675. Es menester señalar que, las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. LPAU, *supra*, sec. 9675.

Ahora bien, cuando se trate de conclusiones de derecho que no envuelvan interpretaciones dentro del área de especialización de la agencia, éstas se revisarán por los tribunales sin circunscribirse al razonamiento que haya hecho la agencia. ***Capó Cruz v. Jta de Planificación et al.,*** supra; ***Pacheco v. Estancias,*** 160 DPR 409, 432 (2003); ***Rivera v. A & C Development Corp.,*** 144 DPR 450, 461 (1997).

Es norma reiterada de derecho que los foros revisores le concederán gran deferencia y consideración a las decisiones de las agencias administrativas, debido a la vasta experiencia y el conocimiento especializado sobre los asuntos que le fueron delegados. ***Graciani Rodríguez v. Garaje Isla Verde,*** 202 DPR 117, 126 (2019); ***Rolón Martínez v. Supte. Policía,*** supra.

Sin embargo, recientemente, el Tribunal Supremo, en ***Vázquez v. Consejo de Titulares***, 216 DPR ___ (2025), 2025 TSPR 56 (resuelto el 21 de mayo de 2025), haciendo eco de lo resuelto en ***Loper Bright Enterprises v. Raimondo***, 603 U.S. 369 (2024), dictaminó que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. De esa manera, enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU. ***Vázquez v. Consejo de Titulares***, supra. Por ello, se pautó que será deber de los tribunales revisar las conclusiones de derecho en todos sus

aspectos, por los mecanismos interpretativos propios del Poder Judicial y no guiados por la deferencia automática. *Vázquez v. Consejo de Titulares*, supra.

Por las razones antes aludidas, las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección. *Capó Cruz v. Jta de Planificación et al.,* supra, pág. 591; *Rolón Martínez v. Supte. Policía,* supra; *García Reyes v. Cruz Auto Corp.,* supra. La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. P.R. v. J.P.,* 146 DPR 64, 130 (1998).

La deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016).

Dichos procedimientos se distinguen del proceso judicial ordinario al promover la flexibilidad y proveer un mecanismo más económico para que la ciudadanía reclame sus derechos. *Acarón et al. v. D.R.N.A.,* 186 DPR 564, 583 (2012). No obstante, la flexibilidad e informalidad del proceso administrativo, es menester que los mismos cumplan con "las garantías mínimas que exige el debido proceso de ley, ya que las decisiones administrativas tienen

el alcance de afectar los intereses propietarios o libertarios de las personas". *Íd.*

**B.**

La Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico establece que, el Estado tiene la obligación de reglamentar las instituciones penales para que sirvan sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social. Art VI, Sec. 19, **Const. ELA**, LPRA, Tomo 1. En aras de cumplir con ese mandato, la Asamblea Legislativa ha promulgado varias figuras estatutarias y, entre ellas, se destaca por su relevancia la libertad bajo palabra, estatuida mediante la Ley de la Junta de Libertad Bajo Palabra, Ley Núm. 118 de 1974, según enmendada, 4 LPRA secs. 1501 *et seq.*, (Ley Núm. 118-1974). ***Pueblo v. Álvarez Rodríguez***, 154 DPR 566, 570 (2001), citando a ***Pueblo v. Zayas Rodríguez***, 174 DPR 530, 536 (1999). A esos fines, se le concedió la facultad para permitir la libertad bajo palabra a una persona recluida en las instituciones penales de Puerto Rico, sujeto a que cumpla el término mínimo dispuesto en ley que no se trate de los delitos excluidos para dicho beneficio. Art. 3 de la Ley Núm. 118-1974, *supra*, sec. 1503; ***Pueblo v. Contreras Severino***, 185 DPR 646, 658 (2012). Este beneficio busca principalmente ayudar a los confinados a reintegrarse positivamente a la sociedad, sin tener que estar encarcelados la totalidad del término de su sentencia. ***Maldonado Elías v. González Rivera***, 118 DPR 260, 275 (1987). Dicho organismo posee la autoridad para conceder a cualquier persona recluida en una institución correccional de Puerto Rico el privilegio de cumplir la última parte de su condena en libertad bajo palabra. ***Benites Nieves v. ELA et al.***, 202 DPR 818, 825 (2019). Es importante señalar que el beneficio de la libertad bajo palabra no es un derecho reclamable, sino un

privilegio cuya concesión y administración recae en el tribunal o en la Junta. ***Pueblo v. Negrón Caldero***, 157 DPR 413, 420 (2002). Empero, el conceder el privilegio, la JLBP puede imponer las condiciones que entienda necesarias, ya que el liberado bajo palabra tiene una libertad cualificada. Art. 3 de la Ley Núm. 118-1974, *supra*, sec. 1503. El convicto en libertad bajo palabra está sujeto a la custodia legal y la intervención de la JLBJ, debiendo cumplir con las condiciones que le hubiesen impuesto. ***Toro Ruiz v. JLBJ***, 134 DPR 161, 167-169 (1993). En esa línea, el Art. 3-C de la Ley Núm. 118-1974, supra, sec. 1503c establece que:

> Una persona recluida en una institución carcelaria en Puerto Rico o en cualquier Programa de Desvío que cumpla con los requisitos establecidos por la Junta mediante reglamento o en esta ley, que muestre un alto grado de rehabilitación y que no represente un riesgo a la sociedad, podrá solicitar formalmente el privilegio de libertad bajo palabra dentro de la jurisdicción de la Junta mediante los mecanismos que disponga la misma, igualmente mediante reglamento. La solicitud por parte de la persona recluida conllevará el consentimiento de ésta para que la Junta pueda revisar y obtener copia de todos los expedientes sobre dicha persona en poder de la Administración de Corrección, a fin de que pueda ser considerada para la concesión de los privilegios contemplados en esta Ley.
> Recibida la solicitud, la Junta referirá la evaluación de la misma a uno de los paneles para el trámite y la adjudicación correspondiente.

Entretanto, sobre los criterios de elegibilidad a programas de libertad bajo palabra, el Art. 3-D de la Ley Núm. 118-1974, *supra* sec. 1503d, dispone:

> La Junta tendrá facultad para conceder el privilegio de libertad bajo palabra a una persona recluida en una institución penal en Puerto Rico, tomando en consideración los siguientes criterios:
> (1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.
> (2) Las veces que el confinado haya sido convicto y sentenciado.
> (3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.
> **(4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.**
> **(5) El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.**
> (6) La edad del confinado.
> (7) El o los tratamientos para condiciones de salud que reciba el confinado.

(8) La opinión de la víctima.

(9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.

(10) **Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.**

(11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento. La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho. (Énfasis nuestro).

También, el procedimiento para la concesión o revocación de la libertad bajo palabra debe cumplir con ciertas salvaguardas procesales. *Maldonado Elías v. González Rivera*, supra, pág. 276. Por ende, la persona que goza de la libertad bajo palabra tiene una libertad condicionada o cualificada, la cual representa un interés de suficiente valor como para exigir las garantías mínimas del debido proceso de ley cuando se le intente despojar del privilegio. *Quiles v. Del Valle*, 167 DPR 458, 475 (2006). En consecuencia, nuestro más alto foro ha interpretado que: (1) las guías y los criterios que se utilizan para conceder el privilegio deben publicarse y hacerse disponible a los confinados; (2) debe realizarse una vista o evaluación de la solicitud; (3) de ordinario, el confinado debe tener acceso a la información que utiliza la JLBP para efectuar su decisión; y (4) al confinado se le debe informar por escrito las razones por las cuales se le deniega el privilegio. *Maldonado Elías v. González Rivera*, supra, pág. 276**.** Asimismo, también ha quedado pautado que, luego de concedido, para que se revoque el privilegio de libertad bajo palabra debe celebrarse: (1) una vista preliminar para auscultar si hay causa probable para creer que el liberado ha violado las condiciones de la libertad bajo palabra, y (2) una vista final antes de la decisión definitiva sobre si la libertad bajo palabra será revocada. *Maldonado Elías v. González Rivera*, supra, págs. 276-277.

**C.**

El Reglamento Núm. 9603 de 25 de septiembre de 2024, Reglamento de la Junta de Libertad Bajo Palabra ("Reglamento 9603"), fue promulgado por la JLBP para adoptar las normas procesales que rigen la función adjudicativa de ese organismo respecto al privilegio de libertad bajo palabra. Art. II, Reglamento Núm. 9603, *supra*, pág. 4.

En lo pertinente, el Art. X del Reglamento Núm. 9603, supra, págs. 36-53, establece los criterios de elegibilidad a ser considerados por la JLBP. La Sección 10.1 (A) del Art. X del Reglamento Núm. 9603, *supra*, págs. 36-48, expresa que la JLBP evaluará las solicitudes del privilegio, caso a caso, de acuerdo con el grado en que el confinado se encuentre en rehabilitación y el término que lleve confinado. La Sección 10.1 (B) del Art. X del Reglamento Núm. 9603, *supra*, págs. 36-48, establece los criterios que tomará en consideración la JLBP, estos son: (1) el historial delictivo; (2) una relación de liquidación de la sentencia que extingue el solicitante; (3) la clasificación de su custodia, el tiempo que lleva en ella y los cambios que haya tenido, si alguno; (4) la Junta no concederá la libertad bajo palabra cuando el peticionario se encuentre en custodia máxima, a menos que sea considerado por ser debidamente documentado por el Departamento de Justicia Federal o el Departamento de Justicia Estatal como cooperadores; (5) la edad del solicitante; (6) la opinión de la víctima; (7) el historial social del solicitante; (8) si cuenta con un plan de salida estructurado y viable respecto a la oferta de empleo y/o estudio, residencia y amigo consejero; (9) el historial de salud del solicitante.

**IV.**

En el caso de marras, nos corresponde resolver si procede confirmar una denegatoria de la JLBP a conceder el privilegio de libertad bajo palabra al recurrente porque no cumple con varios

criterios para su concesión, entre ellos, que cuenta con un *detainer* de inmigración. Por ese factor en particular, la recurrida decretó la suspensión de todos los procedimientos relacionados a su caso hasta que cumpla con la totalidad de la Sentencia.

Para el recurrente, la JLBP erró en su decisión porque el estado de Florida lo aceptó en su jurisdicción y la recurrida ignoró esa determinación. Asimismo, sostuvo que toda la documentación que obra en su expediente contradice el *Informe de Ajuste y Progreso*, informe al cual la JLBP le dio más peso. También, argumentó que el solo hecho de estar en custodia mínima demuestra su buena conducta y su compromiso con su progreso de rehabilitación, además de que es cooperador con sus seguimientos con su técnico socio penal.

Por último, alegó que la JLBP erró al tomar en consideración el *detainer* de inmigración en su contra puesto que, a su juicio, perdió validez por la aceptación informada del estado de Florida. Adujo que la JLBP lo priva de su libertad sin un debido proceso de ley, violando la Constitución del Estado Libre Asociado de Puerto Rico y la Constitución de Estados Unidos.

Por su parte, la JLBP arguyó que la decisión se basó en que el recurrente no ha demostrado compromiso con su proceso de rehabilitación al ser poco cooperador con sus seguimientos con el técnico de servicios socio penales, el Informe de Ajuste y Progreso de febrero de 2025 el cual reflejaba que enfrentaba dificultades con la autoridad, no seguía instrucciones y no cooperaba con su seguimiento, y porque no se había corroborado la identidad del amigo consejero propuesto por el recurrente, ni la oferta de empleo con la que alegó contar.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica adjudicativa apelativa, y a la luz de los criterios esbozados en la LPAU y la jurisprudencia aplicable, determinamos

que corresponde confirmar la *Resolución* recurrida. La JLBP actuó correctamente en derecho al denegar la concesión del privilegio de libertad bajo palabra al recurrente tras evaluar la totalidad de los criterios y del expediente provisto por el DCR. La decisión recurrida es razonable, dada la totalidad de las circunstancias.

Sabido es que la revisión de una decisión administrativa se circunscribe a analizar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho realizadas por la agencia estuvieron sustentadas por prueba sustancial que surgió del expediente administrativo, y (3) si, mediante una revisión completa y absoluta, las conclusiones de derecho fueron correctas. ***Otero Rivera v. Bella Retail Group, Inc.***, supra, pág. 484-485.

Conforme la normativa jurídica pormenorizada precedentemente, las determinaciones de hechos de las decisiones de las agencias se mantendrán por el tribunal de basarse en evidencia sustancial que surja del expediente administrativo y, será nuestro deber revisar las conclusiones de derecho en todos sus aspectos. ***Vázquez v. Consejo de Titulares***, supra.

En primer lugar, cabe destacar que, el recurrente cuenta con un *detainer* de inmigración federal tras su convicción en el Tribunal de Primera Instancia de Puerto Rico en el año 2008. En el ejercicio de su discreción, la JLBP concluyó que no era viable la concesión del privilegio al recurrente, pues iría en contra de los estatutos federales de inmigración. Nótese que, el Reglamento Núm. 9603, *supra*, provee para que la JLBP tome en consideración si existe un *detainer* de inmigración. Sección 10.1(B)(1)(e) del Reglamento Núm. 9603, *supra*, págs. 36-37.

Además, la recurrida identificó el incumplimiento con otros de los criterios de elegibilidad. Ciertamente, la JLBP no solo basó su determinación en la existencia del *detainer* de inmigración, sino que

consideró otros criterios como el comportamiento del recurrente en su proceso de rehabilitación y cooperación con los técnicos socio penales.

También, nótese que, sobre el criterio de la residencia del peticionario, el inciso (8)(e) de la Sección 10.1(B) del Art. X del Reglamento Núm. 9603, *supra*, págs. 41-44, preceptúa que para determinar si la vivienda propuesta es viable, la JLBP considerará, sin limitarse a otras consideraciones, si existe algún impedimento en ley para que el peticionario resida en la vivienda propuesta. Evidentemente, el *detainer* se interpone sobre la posibilidad de residir en la vivienda propuesta por el recurrente.

Así, en virtud de todo lo anterior, corresponde confirmar la *Resolución* recurrida, toda vez que es correcta en derecho.

**V.**

Por los fundamentos pormenorizados, se *confirma* la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones